**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 20-142-DLB-EBA**

**N.P., et al.**                                                                                    **PLAINTIFFS**


**v.**                            **MEMORANDUM OPINION AND ORDER**


**KENTON COUNTY PUBLIC SCHOOLS, et al.**                          **DEFENDANTS**

* * * * * * * * * * *

## I.    INTRODUCTION

This matter is before the Court upon a Motion for Summary Judgment filed by Defendants (Doc. # 28), in addition to two Motions for Leave to file Excess Pages filed by Defendants.   (Docs. # 27 and 30).   The pending motions have been fully briefed (Docs. # 29 and 32) and are thus ripe for the Court's review.   For the reasons stated herein, both Motions for Leave to file Excess Pages (Docs. # 27 and 30) are **GRANTED**, and Defendants' Motion for Summary Judgment (Doc. # 28) is **GRANTED**.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

At the time of this lawsuit's filing in 2020, Plaintiff N.P. was a 16-year-old junior at Simon Kenton High School in Independence, Kentucky.   (Doc. # 1 ¶ 1).   N.P.'s parents filed this lawsuit on his behalf and on his mother's own behalf in October 2020, alleging that N.P. had suffered discrimination based on his disabilities at the hands of teachers and administrators within the Kenton County School District.   (*See generally id.*).   More specifically, the lawsuit named defendant teachers and administrators at Simon Kenton and at Twenhofel Middle School, in addition to district officials and school board

members.  (*Id.*).  In the more than two years since filing, N.P. transferred to the Pendleton County School District and graduated from Pendleton County High School in spring 2022. (Doc. # 28 at 10).

But while N.P. was enrolled in Kenton County Public Schools, he and his parents allege that he was "discriminated against, harassed and bullied by [] educational professionals" because of his disabilities.[1]  (Doc. # 1 at 3).  The specifics of N.P.'s alleged discrimination involve several different incidents between N.P. and various school staff members.  First, N.P. and his parents allege that three Simon Kenton teachers "engaged in inappropriate sexual comments towards N.P., calling into question his sexual orientation [and] among other things, laughing and making fun of N.P. in front of other students."  (*Id.* ¶ 31).  Additionally, they allege that two teachers made fun of N.P.'s disability in front of other students (*id.* ¶ 32), that a teacher engaged in harassment by throwing N.P.'s school papers on the ground and refusing to give him make-up work, (*id.* ¶ 33), and that football coach teachers encouraged other students to bully N.P. (*Id.* ¶ 35).  They also allege that teachers and coaches made negative comments about N.P. to other students and discouraged students from associating with N.P., (*id.* ¶ 55), that a teacher started rumors about N.P.'s sexual orientation (*id.* ¶ 61), and that district officials failed to assist N.P. after another student pointed a handgun at N.P. inside Simon Kenton High School.  (*Id.* ¶ 65).  Based on these allegations, N.P. and his parents seek a jury trial and damages against the school district and its involved employees. (*Id.* at 16-17).

---

[1]     In September 2021, the Court entered a Memorandum Opinion and Order granting in part a Motion to Dismiss filed by Defendants.  (Doc. # 13).  For purposes of adjudicating the instant motion, the Court only recounts facts here which are relevant to the remaining claims.  A full recollection of the facts which relate to all counts in the Complaint is contained within Doc. # 13.

In September 2021, the Court entered a Memorandum Opinion and Order dismissing some of the claims by partially granting a Motion to Dismiss filed by Defendants.  (Doc. # 13).  At this stage in the lawsuit, the remaining claims are: (1) disability discrimination under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and the Kentucky Civil Rights Act with respect to N.P.'s right to a public education against individual teacher defendants (Counts II and III of the Complaint);  (2) sexual harassment under Title IX of the Education Amendments of 1972 against the district and school board as entities (Count VI of the Complaint);  and (3) negligence against Simon Kenton administrators (Count VII of the Complaint).  (Doc. # 13 at 20-21). The remaining Defendants in the lawsuit are the Kenton County School District and its Superintendent Mr. Webb; the Kenton County School Board; individual Simon Kenton principal Defendants Mr. Popham, Mr. Reinhart, and Mr. Steiner; and all named individual teacher Defendants, including Mr. Fraiser, Mr. Kiefer, Mr. Jones, Ms. Dugan, two unknown teachers, and Mr. Funke.

Defendants have now moved for summary judgment on all remaining claims, having filed a Motion for Summary Judgment.  (Doc. # 28).  That Motion has been fully briefed (Docs. # 29 and 32), and the Court has accordingly reviewed the Motion and associated filings.  For the reasons that follow, Defendants' Motion is **granted**.

III.   **ANALYSIS**

As a threshold matter, the Court notes that Defendants have filed two Motions for Leave to File Excess Pages under Local Rule 7.1(d), seeking to file excess pages in their Motion and Reply.  (Docs. # 27 and 30).  Seeing that this lawsuit names a large number of parties with overlapping and related claims, and that all of those parties and claims are

addressed in Defendants' singular Motion, the Court will **grant** both Motions for Leave to File Excess Pages.  (*Id.*).

### A.    IDEA Administrative Exhaustion

Before addressing the substantive merits of the case, Defendants have argued that summary judgment is appropriate because Plaintiffs failed to administratively exhaust their claims under the Individuals with Disabilities in Education Act ("IDEA").  (Doc. # 28 at 9).  Defendants' argument is unavailing because the Court has already addressed that issue and the law of the case doctrine precludes reconsideration.

The law of the case doctrine "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)).   The doctrine generally "precludes a court from reconsideration of issues 'decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition.'" *Id.* (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)).  Here, the Court decided in addressing a Motion to Dismiss that N.P.'s claims stem from "non-educational injuries," and that in turn, they are not barred by a previous settlement agreement entered into between N.P. and his parents and the school district.  (Doc. # 13 at 19).

Defendants now argue that the Court's determination was limited to the question of whether N.P.'s claims were barred by the settlement agreement, and that the question of IDEA exhaustion was "not ripe for review" during adjudication of the Motion to Dismiss. (Doc. # 32 at 3).  However, Defendants' argument misunderstands the Court's previous ruling.

The parties' previous settlement agreement waives future claims related to the denial of a free appropriate public education ("FAPE"), but the waiver "does not include a theory of recovery which is unrelated to FAPE[.]"  (Doc. # 9-1 at 3).  As the Court explained, inquiring whether a lawsuit includes a "theory of recovery" related to FAPE is also used to determine whether a lawsuit is subject to the IDEA's administrative exhaustion requirement, and so the law guiding that inquiry would also guide an inquiry into the settlement waiver here.  In the Court's own words, "[i]f the right to a FAPE is implicated [by N.P.'s claims], the IDEA requires potential plaintiffs to exhaust their administrative remedies before pursuing a cause of action in federal court if plaintiffs are 'seeking relief that is also available' under the IDEA." (Doc. # 13 at 17).  Thus, "[b]ecause the parties' settlement agreement bars claims related of the denial of FAPE under the IDEA, it logically follows that if the IDEA process could have provided Plaintiffs relief, this Court would be barred from reviewing the claims" due to the settlement waiver.  (*Id.* at 19).  From there, the Court used controlling precedent on IDEA exhaustion to determine that N.P.'s claims are "non-educational in nature" and thus not barred by the settlement waiver.  (*Id.*).

But unfortunately for Defendants, the Court's determination applies in equal force now.  While the earlier analysis resulted in the decision that the settlement waiver did not apply to N.P.'s claims, the conclusion is the same – N.P.'s claims are "non-educational in nature" due to his Complaint being "largely focused on the discrimination, harassment, and bullying that N.P. was allegedly subjected to by reason of his disability."  (*Id.* at 18). As the Court further held, "[b]ecause such injuries are 'non-educational in nature,' they 'cannot be remedied by the [IDEA] administrative process,'" (*id.*) (quoting *F.H. ex rel Hall*

*v. Memphis City Schs.*, 764 F.3d 638, 644 (6th Cir. 2014)), and thus are not subject to the IDEA's administrative exhaustion requirement.  With these threshold issues now resolved, the Court will move into analyzing the substantive arguments raised in Defendants' Motion for Summary Judgment.

### B.      Standard of Review (Summary Judgment)

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, no genuine dispute exists where no reasonable jury could return a verdict for the nonmoving party.  *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).  The moving party bears the burden of showing the absence of a genuine issue of material fact.  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  After that burden is met, to avoid the entry of summary judgment, the non-moving party must produce "specific facts" showing a "genuine issue" necessitating the matter moving forward to trial.  *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986).  However, where applicable, the non-moving party's rebuttal burden is light, as the Court must draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Court's function at the summary judgment stage is limited to determining whether sufficient evidence exists to make a factual issue a proper question for a jury.  *Anderson*, 477 U.S. at 250.  In making that determination, the Court does not weigh

6

evidence or determine the truth of matters asserted.  *Id.* at 249.  Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir. 1989), as the law is clear that "the non-moving party must cite specific portions of the record" to defeat a summary judgment motion.  *U.S. Structures, Inc. v. J.P. Structure, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997).  Accordingly, "the inquiry performed is the threshold inquiry of determining whether there is a need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only be a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson*, 477 U.S. at 250.

### C.      Disability Discrimination

N.P.'s disability discrimination claims are based on the Kentucky Civil Rights Act ("KCRA"), Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act.  (Doc. # 1 at 13).  More specifically, N.P. alleges that Defendants excluded him from participation in public school and associated programs (such as the football team) because of his disabilities.  (*Id.*).  N.P.'s allegations can be remedied by any or all three of the previously listed statutes, and so claims brought under these statutes are usually analyzed simultaneously.  *Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007); *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995).

The parties agree that to make a disability discrimination claim under these statutes, a plaintiff "must show that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability."  *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008)

(citing *Maddox*, 62 F.3d at 846); (*see also* Docs. # 28 at 15 and 29 at 4).  With respect to the third prong, the Sixth Circuit has noted that "[t]o prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by [the IDEA] must be shown."  *S.S.*, 532 F.3d at 453 (quoting *Sellers v. Sch. Bd. of Manassas*, 141 F.3d 524, 528-29 (4th Cir. 1998)) (internal alterations omitted).  In other words, "surmounting that evidentiary hurdle requires that either bad faith or gross misjudgment must be shown before a § 504 violation can be made out, at least in the context of education of handicapped children."  *Crochran v. Columbus City Schs.*, 748 F. App'x 682, 687 (6th Cir. 2018) (quoting *G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013)).

But just as is the case in other settings, discrimination can be proven by direct or indirect evidence.  In cases such as this one, where no "smoking gun" exists pointing toward discriminatory animus or intent, a plaintiff must prove discrimination through indirect evidence.  *M.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 452 (6th Cir. 2021) (quoting *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 683 (6th Cir. 2016)).  When evaluating a case of discrimination with indirect evidence, courts apply the burden shifting framework from *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973).  *See also M.J.*, 1 F.4th at 452.  However, in this case, both parties have focused briefing on the issue of causation, and so the Court's analysis will be accordingly limited to part of the first prong of the *McDonnell Douglas* framework, which requires the plaintiff to show a prima facie case.  *See id.* at 453 (noting that "[t]he only point of contention is causation" and only analyzing causation in evaluating a motion for summary judgment).  To establish "the causation that [the ADA and the Rehabilitation Act] require, 'the plaintiff must

establish a but-for relationship between the protested act and the individual's disability.'" *Id.* (quoting *Gohl*, 836 F.3d at 682).

Defendants argue that no reasonable jury could find for N.P. on this claim because no evidence exists to show that N.P.'s disabilities were the "but for" cause of the allegedly discriminatory actions taken by Kenton County teachers and staff. (Doc. # 28 at 15). In response, N.P. has posited that "facts are certainly in dispute," and points to statements from his own deposition and from a set of interrogatories filed on his behalf. (Doc. # 29 at 4). Unfortunately for N.P., his response is insufficient and summary judgment will be granted in favor of Defendants on this claim.

First, while N.P. has made conjectures related to the evidence, he has failed to provide the Court with adequately detailed record citations for the Court to examine the sufficiency of that evidence. (*See* Doc. # 29 at 4). As previously stated, "the non-moving party must cite specific portions of the record" to create a genuine issue of material fact for purposes of defeating a summary judgment motion. *U.S. Structures*, 130 F.3d at 1191; *see also* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to *particular* parts of materials in the record[.]" (emphasis added)). Here, in responding to the Defendants' arguments on the discrimination claim, N.P. has provided record citations to three sources: his own deposition, of which no excerpts have been attached to his response;[2] a set of

---

[2] In fact, both parties cited to N.P.'s deposition without providing excerpts to the deposition as exhibits, and the deposition transcript is otherwise not included in the record. After reviewing both parties' briefings, the Court has concluded that the parties do not dispute the facts as contained within the deposition, but rather, how the facts apply to the legal questions at issue – whether they demonstrate disability discrimination. That conclusion is bolstered by no other (conflicting) deposition being used by either party. Thus, the Court considers those facts raised through the deposition of N.P. as "undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2) (providing such for when "a party fails to properly support an assertion of fact[.]").

interrogatory responses written by him, and attached as an exhibit to his response; and Defendants' Motion for Summary Judgment.  (Doc. # 29 at 4).  None of the record citations to these sources contain page numbers, and unfortunately, "the Court has no duty to 'conduct its own probing investigation of the record' in deciding a motion for summary judgment, and it expressly declines to undertake such an effort[.]"  *Meyrose v. Vitas Hospice Servs., LLC*, No. 19-CV-91-DLB-CJS, 2021 WL 5139478, at *8 (E.D. Ky. Nov. 3, 2021) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992)). Specifically, the interrogatory responses provided are contained within a 30-page document, and N.P. has provided neither page numbers nor paragraph numbers in his citations to it.  (Doc. # 29 at 4).  In that absence, the Court is unable to examine the sufficiency of his statements, such as "the fact remains that N.P. and another student with a disability were the only ones who were subject to discipline even though multiple other students engaged in similar misbehaviors."  (*Id.*) (citing to Defendants' Motion and N.P.'s interrogatories with no further specifics).

Second, even if the evidence was provided in a sufficient manner, no reasonable jury could find that N.P. was discriminated against because of his disabilities.  To restate, in cases involving discrimination against schoolchildren, the law "requires [a plaintiff to demonstrate] either bad faith or gross misjudgment," *Crochran*, 748 F. App'x at 687 (internal quotations omitted), to succeed on an ADA / § 504 claim – "something more than a mere failure to provide the free appropriate education required by [the IDEA.]"  *S.S.*, 532 F.3d at 453 (internal quotations omitted).  The facts of this case undoubtedly tell a tale of a tumultuous tenure at Kenton County Schools for N.P., in terms of his own misbehavior and some misbehavior by Kenton County teachers, too.  However, none of

the facts raised by N.P. in his Response to Defendants' Motion go beyond the "mere scintilla of evidence" required to defeat a motion for summary judgment, *Anderson*, 477 U.S. at 252, let alone arise to the "bad faith or gross misjudgment" standard required by the Sixth Circuit in these types of cases.  *Crochran*, 748 F. App'x at 687; *see also G.C.*, 711 F.3d at 635.  N.P. has attested that "he was first singled out because of his Tourette's syndrome which caused involuntary muscular tics," but the litany of other behavioral incidents raised in this case hardly relate to N.P.'s muscular tics – and importantly, almost none of the incidents raised in his Response relate to his muscular tics. (*See* Doc. # 29 at 4).

The only fact raised in the Response that can be ostensibly tied to N.P.'s Tourette's syndrome is that a football coach told N.P. "that he would not play football because of 'his eye rolling.'"  (*Id.*).  Importantly, this fact is facially insufficient because "Plaintiffs' Complaint, insofar as it alleged disability discrimination in N.P.'s removal from the Simon Kenton football team" has been dismissed from the lawsuit (Doc. # 13 at 8), but the Court will nonetheless address the fact *arguendo* to complete the record.  While N.P.'s disability manifestations included eye rolling tics, eye rolling is also universally recognized as a sign of disrespect or mockery toward another person.  N.P. has provided no evidence to suggest that the football coach knew of N.P.'s disability, including that his disability manifested through eye rolling.  In that absence, even if N.P.'s football coach did expressly inform him that he would not play football because of his eye rolling, that fact is not materially instructive of disability discrimination, as it does not suggest "bad faith or gross misjudgment" by the football coach, as being offended at a teenager's eye rolling is a reasonable response – especially in the context of a sports team, which involves a

coach demanding the respect of his players.   *Crochran*, 748 F. App'x at 687.   Thus, without additional information about the football coach's specific knowledge of N.P.'s disability or his intent to discriminate against N.P., his reaction to the eye rolling is not a material fact.

Otherwise, to the extent that N.P. attempts to base his case on a theory that he was "first singled out because of his Tourette's syndrome" which led to further mistreatment by Kenton County teachers and staff, the large number of incidents which are unrelated to N.P.'s disability undercuts that theory entirely.   More specifically, N.P. was either caught or accused of licking a student's ear in a bathroom (Doc. # 28 at 8), spitting on other students on a school bus (*id.* at 9), and urinating on a football field (*id.*). None of these events, all of which are notably undisputed by N.P., are related to or caused by N.P.'s Tourette's syndrome, as none of them involve "involuntary muscular tics." (Doc. # 29 at 4).   N.P. has posited that "his disability manifestations were deemed to be willful disrespect by the teachers . . . [giving him] a reputation for being a troublemaker," but the undisputed evidence suggests that N.P. may have been a troublemaker notwithstanding his disability.  (Doc. # 29 at 4).  In other words, the behavioral incidents provide context to show that the actions taken by Kenton County teachers with respect to N.P. were motivated by N.P's own behavior independent from his disability.  Accordingly, no reasonable jury could examine these uncontested facts and find that Defendants acted

in "bad faith or gross misjudgment" toward N.P. because of his disabilities.[3]  *Crochran*, 748 F. App'x at 687.

Third, N.P. has not provided any evidence beyond one broad statement (cited without page numbers) that his non-disabled peers were treated differently by Kenton County teachers and staff.  The law of the Sixth Circuit is clear that "plaintiffs must present evidence of how the school treated comparable, non-disabled students" to make a prima facie case of disability discrimination.  *M.J.*, 1 F.4th at 453 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).  N.P. has simply stated that "the fact remains that N.P. and another student with a disability were the only ones who were subject to discipline even though multiple other students engaged in similar misbehaviors."  (Doc. # 29 at 4).  That statement alone, with no additional details or information, is not sufficient to raise a genuine issue of material fact for purposes of defeating a summary judgment motion.  *Anderson*, 477 U.S. at 252.  Judgment as a matter of law will accordingly be entered in favor of Defendants on N.P.'s discrimination claims, listed as counts II and III in the Complaint.

### D.    Sexual Harassment

N.P. has also lodged a sexual harassment claim against the school board and the school district as entities under Title IX of the Education Amendments of 1972.  (Doc. # 1 at 15); (*see also* Doc. # 13 at 12) (dismissing this claim against individual defendants).

---

[3]     While some teachers, namely Dugan and Smith, may have exhibited "bad faith or gross misjudgment" toward N.P. in making comments containing sexual innuendo toward him, those facts apply to N.P.'s sexual harassment claim, not his disability discrimination claim.  (Doc. # 29 at 4-5).  Even if those facts were considered as part of the discrimination claim, they remain completely unrelated to N.P.'s disability, as they arose from N.P. having licked another student's ear in the bathroom, and N.P.'s disability otherwise does not relate to the licking or to the comments made by Dugan and Smith.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."   20 U.S.C. § 1681(a).   More specifically, Title IX broadly prevents discrimination on the basis of sex, "which encompasses a teacher's sexual harassment of a student."   *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005).   However, Title IX "authorizes suit only against the school itself and not individual administrators." *Stiles ex rel. D.S. v. Grainger Cnty., Tenn.*, 819 F.3d 834, 848 (6th Cir. 2016).

To succeed on a Title IX claim against a school district, a plaintiff is required to show that the district had actual notice of harassment occurring, and that the district was deliberately indifferent to it.   *Williams*, 400 F.3d at 366 (citing *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 292 (1998)).   The "deliberate indifference of a school district is shown where there is an official or other person with authority to take corrective action, who has 'actual knowledge of [the abuse], and fails to adequately respond.'"   *Id.* (quoting *Gebser*, 524 U.S. at 290) (alterations in original) (internal quotations omitted).

Here, N.P.'s sexual harassment claim arises from an interaction with two teachers at Simon Kenton High School, Ryne Smith and Bridget Dugan, after N.P. was accused of licking another student's ear in the bathroom.   (Doc. # 28 at 8).   N.P. recorded this interaction, during which Dugan and Smith questioned N.P. about the bathroom incident, indicating that they believed N.P. to have licked another student's ear.   (Doc. # 28-4 at 2).   From there, the recording contains Mr. Smith referring to "LBJ" and "NBJ," which prompts Ms. Dugan to question N.P. whether he knows what the acronyms mean.   (*Id.*). After concluding that N.P. did not know the meaning of the acronyms, Ms. Dugan says,

"Good." to which Mr. Smith adds, "We all do, and that's funny." (*Id.*). The recording ends with N.P. denying again that he licked the other student's ear, and Ms. Dugan saying "Hey [N.P], be good." (*Id.*).

The Court will not speculate on the specific meanings of these acronyms, but notes that no material issue of fact exists with respect to their meanings. While N.P. directly argues that the acronyms refer to a sexual innuendo, (Doc. # 29 at 6), Defendants do not directly address the acronym's meaning, but generally seem to acquiesce. (*See* Doc. # 28 at 20) (referring to the incident as "an unprofessional reference to a reported sexual act"). With no facts in dispute, Defendants have focused on the argument that no reasonable jury could find that Kenton County acted with deliberate indifference toward the interaction between N.P. and the teachers. (*Id.*). The Court agrees.

Deliberate indifference arises where "the recipient [of federal funding] itself intentionally act[s] in clear violation of Title IX[.]" *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 259 (6th Cir. 2000) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)). In other words, "[t]he deliberate indifference must, at a minimum, 'cause [students] to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645 (alteration in original) (internal quotations omitted). Otherwise, "a plaintiff may demonstrate deliberate indifference . . . 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" *Vance*, 231 F.3d at 260 (quoting *Davis*, 526 U.S. at 648).

In short, nothing in this record demonstrates clearly unreasonable conduct by the school district, and thus, no reasonable jury could find for N.P. on this claim. N.P. has argued that deliberate indifference exists because (1) in its documentation of the incident,

the school district "only cit[ed] two of the four policies of concern and [gave] no explanation for disregarding the other two," (2) the school district failed to identify "LBJ" and "NBJ" as sexual innuendo in its documentation, and (3) Mr. Smith was given a promotion in the form of a coaching position after the incident occurred.  (Doc. # 29 at 5-7).  While each of these arguments demonstrate N.P.'s subjective disagreement with the actions taken by the school board, none of them exhibit deliberate indifference, which "is a substantial showing[,] and neither negligence nor a mere disagreement over the wisdom or correctness of a [relevant decision] is sufficient[.]"  *Faulkner v. Alexander*, No. 3:13-CV-654, 2013 WL 5758849, at *2 (M.D. Tenn. Oct. 24, 2013), *R. & R. adopted in full*, 2013 WL 6048231 (M.D. Tenn. Nov. 14, 2013) (citing *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995)).[4]  In other words, disagreement with or objection toward the way a situation was handled does not amount to an absence of action or a grossly inadequate course of action.

As applied to this case, even if N.P. disagrees with the adequacy of the investigation or the degree to which the school district recorded its findings, the

---

[4]     Most frequently, the deliberate indifference standard is applied in Eighth Amendment cases involving the treatment of incarcerated individuals.  *Faulkner* is such a case, and while not factually on point, it accurately sums up Sixth Circuit law on deliberate indifference.  2013 WL 5758849, at *2.  Otherwise, courts beyond the Sixth Circuit have equally stated that subjective disagreements with a school district's handling of a harassment claim is not sufficient to prove deliberate indifference.  *E.g.*, *T.L. v. Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1309 (D. Or. 2014) ("that the remedy imposed by the educational institution is not the preferred remedy of the victim does not create an issue of fact with regard to deliberate indifference." (internal citations omitted)); *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 732 (7th Cir. 2009) ("Although [Plaintiff] may disagree with the discipline imposed, her disagreement is subjective and does not establish unreasonableness or deliberate indifference."); *Stover v. Coll. of William and Mary*, __ F. Supp. 3d __, No. 4:21-CV-150, 2022 WL 10585431, at *8 (E.D. Va. Oct. 18, 2022) ("But Plaintiff's disagreement with W&M's decision not to discipline . . . in the manner she desired is an inadequate basis" for finding deliberate indifference, and further noting that the "Court will not second guess W&M's disciplinary decision" in the absence of deliberate indifference.").

undisputed facts remain that the school district (1) investigated the incident and (2) publicly and privately reprimanded Ms. Dugan and Mr. Smith.  (Docs. # 28-4, 28-5, and 28-6).  In the school district's investigation report, it noted that the teachers "did use unprofessional language and motivation techniques" toward N.P.  (Doc. # 28-4 at 4).  Even though the school district did note that the teachers' actions "do not rise to the level of harassment or discrimination," (*id.*), the school district's conclusions and disciplinary actions otherwise discouraged similar future behavior from Ms. Dugan, Mr. Smith, and other teachers.  In letters to Ms. Dugan and Mr. Smith, the superintendent wrote that "We should not be having this discussion. You made a serious error in judgment and did not do what was best for students," clearly demonstrating dissatisfaction.  (Docs. # 28-5 and 28-6).  Ms. Dugan was additionally required to complete trainings on diversity awareness and student behavior.  (Doc. # 28-5).

Thus, to the extent that N.P. may disagree with the school district on whether the teachers' actions constituted harassment, such a disagreement is immaterial. Irrespective of how the school district labeled the incident, the district took reasonable steps to prevent future incidents from occurring.  *See also T.L.*, *supra* note 6, 68 F. Supp. 3d at 1309 (". . . that the remedy imposed by the educational institution is not the preferred remedy of the victim does not create an issue of fact with regard to deliberate indifference." (internal citations omitted)).  Accordingly, on this record, no reasonable jury

could agree with N.P.'s position that the school district's actions were "deliberately indifferent to the substantial risks of students being sexually abused." [5]  (Doc. # 29 at 6).

Otherwise, to the extent that N.P. attempts to raise additional factual issues through his assertion of "further instances of harassment reported by N.P. during the investigation and after that were not audibly recorded," (Doc. # 29 at 5), the Court notes that his assertion is immaterial for the same reasons discussed under his discrimination claim.  (*Supra* part III.C).  The same is true here as the Court previously stated there: this statement alone, with no additional details or information, and without a detailed record citation, is not sufficient to raise a genuine issue of material fact for purposes of defeating a summary judgment motion.  (*Id.*); *Anderson*, 477 U.S. at 252.

While N.P.'s Complaint does list additional factual allegations under his sexual harassment claim, including Ms. Dugan and unknown teachers "calling into question" his sexual orientation (Doc. # 1 ¶ 60), Ms. Dugan starting rumors regarding N.P.'s sexuality (*id.* ¶ 61), those allegations are not referenced in briefing on the instant Motion for Summary Judgment.  (*See* Doc. # 29 at 5-7).  Instead, N.P. has only referenced the conversation with Dugan and Smith about the bathroom incident, and the Court has limited its analysis to that conversation only, as the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (emphasis added).  Even if these allegations were included in the summary

---

[5]     The Court is additionally skeptical whether the interaction between N.P. and the teachers would even amount to sexual abuse – as evidence of an isolated interaction involving an innuendo is hardly probative of a sustained pattern of sexual harassment.  However, the Court need not address that point because the parties did not brief it, and in the absence of deliberate indifference, the claim otherwise fails in its entirety.

judgment briefing, they would still fail to address the lack of deliberate indifference which is fatal to N.P.'s harassment claim.  For these reasons, Defendants' Motion for Summary Judgment will be **granted** with respect to N.P.'s harassment claim, listed as count VI of the Complaint.

### E.    Negligence

Lastly, a negligence claim remains under Kentucky law against school administrator defendants related to an incident during which N.P. was allegedly threatened with a handgun by another student at Simon Kenton High School.[6]  (Doc. # 1 at 16).  According to N.P., he reported the incident to his classroom teacher, who in turn reported it to Simon Kenton administrators.  (*Id.*).  The administrators, N.P. alleges, "failed to provide N.P. with any kind of assistance, . . . failed to report the incident to N.P.'s parents, [and] N.P. was forced to endure several hours of overwhelming fear and anxiety" because of the administrators' purported mishandling of the incident.  (*Id.*).

In briefing on summary judgment, though, the facts have diverged to some degree, albeit in ways that are not useful.  And in any event not to the degree necessary to deny summary judgment.  The school district alleges that the handgun was actually a BB gun (Doc. # 28 at 21), while N.P. states that the district's characterization of the weapon as a BB gun is an "attempt[] to minimize the incident." (Doc. # 29 at 7).  But the crux of N.P.'s negligence claim lies in the school's purported failure to notify his parents of the incident, or alternatively, in the amount of time it took the school to notify his parents.  (Docs. # 29

---

[6]    In deciding this claim after the federal claims have been disposed of, the Court exercises its supplemental jurisdiction under 28 U.S.C. § 1367, as all claims in this lawsuit form the same case or controversy.  The Court will adjudicate the remaining claim in the interest of convenience to the parties and a more expeditious resolution of the entire case.  *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 761 (6th Cir. 2000) (quoting *Edmonson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1267 (D.C. Cir. 1995)).

at 7-8 and 32 at 12).  According to N.P, his parents "state that they were never notified of the incident," while the school board points out inconsistencies in N.P.'s attestation and further notes that the school sent an "all call" to parents about the gun incident.  (Doc. # 32 at 12).  After reviewing the arguments and the applicable law, the Court has concluded that the factual disputes raised by N.P. are not supported by evidence in the record, and that they are furthermore immaterial for the foregoing reasons.

A negligence claim under Kentucky law requires the existence of (1) a duty owed from the defendant to the plaintiff, (2) a breach of that duty, (3) injury to the plaintiff, and (4) causation between the breach and the injury.  *E.g.*, *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003).  In Kentucky, "principals do have a duty to provide a safe school environment, but they are not insurers of children's safety," and "must only be reasonably diligent in this task."  *Marson v. Thomason*, 438 S.W.3d 292, 299 (Ky. 2014); *see also Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 148 (Ky. 2003) ("The special relationship thus formed between a school district and its students imposes an affirmative duty on the district . . . to take all reasonable steps to prevent foreseeable harm to its students." (internal quotations omitted)).  Here, no evidence exists to suggest that the Kenton County school administrators were not reasonably diligent, and more importantly, N.P. has failed to raise a genuine issue of material fact on his negligence claim after Defendants have shown an absence of such.

First, N.P.'s argument about whether the school district accurately characterizes the weapon as a BB gun or an actual firearm is immaterial because a post-hoc re-characterization of the weapon is not probative of negligence.  Even though N.P. believes the district chose to label the weapon as a BB gun after-the-fact to "minimize the

incident," he does not state how or why that characterization relates to how the district handled the incident on the day it occurred–let alone how or why it constitutes negligence. (*See* Doc. # 29 at 7-8).  In his Response to Defendant's Motion, N.P. does not argue that the district failed to investigate whether the weapon was a BB gun or a firearm on the day of the incident, and he does not argue that the school district otherwise mishandled the incident as it occurred.[7]  In other words, the district's behavior *after* the alleged negligence occurred is neither instructive nor helpful to his claim, because "[a] fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012).

Second, no evidence in the record exists to support N.P.'s argument that the school district completely failed to notify his parents of the incident.  (Docs. # 29 at 7-8 and 32 at 12).  In fact, N.P.'s own retelling of the facts suggests the opposite – that his parents were notified about the incident, albeit maybe not in the manner they would have preferred.  (*See* Doc. # 29 at 7).  In his Response to Defendants' Motion, N.P. says that his father's "recollection of the date was that not only did administration not contact him or N.P's mother, but that when Jason Ponder arrived at the school, he was told that N.P. wasn't involved in the incident[.]"  (*Id.*).  Beyond that statement, it is unclear to the Court how or why Jason Ponder went to Simon Kenton if he wasn't notified of the incident.  Even

---

[7]     While N.P.'s Complaint does mention that the district failed to offer him any assistance after he reported the incident, the Court notes that those facts are not mentioned in his briefing on the instant motion.  As previously explained, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968);  *see also Anderson*, 477 U.S. at 248 (clarifying that the party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.")

if Mr. Ponder made a routine trip to the school to pick up N.P., his statement itself reveals that he was notified of the incident when he arrived at the school, as "he was told that N.P. wasn't involved in the incident," which directly contradicts his previous assertion that they were never notified of the incident at all.   (*Id.*).   But more consequently, as Defendants point out in their Reply, with a detailed citation to the record (Doc. # 32 at 12), evidence written and supplied by N.P. himself in support of his Response reads that "Ms. Ponder found out about the incident through the parent 'all call,' and she was never informed that her son specifically was involved in the incident."  (Doc. # 29-1 at 20).  The difference between N.P.'s parents' preference to be personally notified by the school district as opposed to being notified through a general call to all parents does not amount to a violation of the "reasonable steps" standard for school negligence under Kentucky law.  *Williams*, 113 S.W.3d at 148 (internal citations omitted).

Otherwise, with respect to N.P's parents' preference for personal or direct notification of the incident, to the extent that N.P. suggests that the "Court has already determined that a 'reasonably diligent' principal or assistant principal would have reported this incident [directly] to N.P.'s guardian," that suggestion is not assistive to him now. (Doc. # 29 at 7 (citing Doc. # 13 at 15)).  The Court did state in deciding on Defendants' Motion to Dismiss that the facts laid out in N.P.'s Complaint, accepted as true, would suggest a breach of duty.  (Doc. # 13 at 15).  However, the Court also stated that "the Court will not decide here whether [Defendants] breached a duty owed to N.P." because at the motion to dismiss stage, such an inquiry is not the Court's role.  (*Id.*).  Instead, at that stage, the Court must blindly accept the facts from the Complaint as true.  (*Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

But here, unfortunately for N.P., the same is not true, as the Court is called to evaluate the record evidence to see if a triable issue of fact exists for resolution by a jury. *Anderson*, 477 U.S. at 250.  Where those issues do not exist, the Court must rule upon the legal questions at issue.  As previously stated, on this record, no triable issues of fact exist with respect to N.P.'s negligence claim, and no reasonable jury could find that Defendants breached a duty of care owed to N.P.  Judgment as a matter of law will accordingly be entered in favor of Defendants on N.P.'s negligence claim, listed as Count VII of the Complaint.

## IV.   CONCLUSION

For the reasons previously stated herein, no triable issues of material fact exist with respect to any of the remaining claims in N.P's Complaint, and judgment as a matter of law will be entered in favor of Defendants on all claims.  Accordingly,

**IT IS ORDERED** as follows:

(1)    Defendants' Motions for Leave to File Excess Pages (Docs. # 27 and 30) are **GRANTED**;

(2)    Defendants' Motion for Summary Judgment (Doc. # 28) is **GRANTED;**

(3)    This matter is **DISMISSED** and **STRICKEN** from the Court's active docket; and

(4)    A separate and corresponding **Judgment** is filed concurrently herewith.

This 8th day of February, 2023.



**Signed By:**

*David L. Bunning*

**United States District Judge**